No. 95,812

STATE OF KANSAS, *Appellee*, v. SHAUN P. FITZGERALD, *Appellant*.

(192 P.3d 171)

Opinion filed September 12, 2008.

*Kristen B. Patty*, of Wichita, argued the cause, and *Kurt P. Kerns*, of Ariagno, Kerns, Mank & White, L.L.C., of Wichita, was with her on the brief for appellant.

*Kristi L. Barton*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Shaun P. Fitzgerald challenges rejection of his motion to suppress drug evidence found in his girlfriend's truck after a traffic stop led to his arrest for driving on a suspended license. He argues that his possession of a large amount of currency was not enough, standing alone, to supply probable cause to support a warrantless search.

Fitzgerald was pulled over while traveling by himself in his girlfriend's truck in the late afternoon. He had run a stop sign. Officer R.A. Thatcher discovered that Fitzgerald's driver's license was sus-

pended. Fitzgerald told Thatcher that he had already called his girlfriend to come to the scene and pick up his truck, and he was completely cooperative while Thatcher placed him under arrest. Once Fitzgerald was cuffed and patted down, Thatcher found $2,673 in cash, which Thatcher described as "a mini cash register," when going through Fitzgerald's pockets. This discovery prompted the officer to ask Fitzgerald about his employment. Fitzgerald replied that he earned $10 an hour at a car detailing shop and that the money in his pockets was for rent and bills.

The officer then returned to the girlfriend's truck with the intention of searching it for drug evidence. He did so and found methamphetamine, digital scales, and several small plastic bags inside.

Accounts of events diverge somewhat at that point, which is when Fitzgerald's girlfriend arrived. According to a stipulation of the parties, she would have testified that Thatcher told her he had already found money on Fitzgerald and had already searched the truck and found drugs. He then sought her consent to search, and she asked if she could drive the truck away. The officer responded that she could not take the truck until a more thorough search had been performed. She then agreed to the search. Thatcher, on the other hand, testified that he merely sought and received the girlfriend's consent to search after she arrived at the scene. The second search of the truck uncovered no additional evidence, but Fitzgerald made incriminating statements to a second police officer who had arrived at the scene.

The district judge rejected Fitzgerald's motion to suppress the drug evidence and statements, ruling that two exceptions to the Fourth Amendment's warrant requirement applied: (1) probable cause plus exigent circumstances, and (2) inevitable discovery based on the girlfriend's later voluntary consent.

Fitzgerald was convicted of possession of methamphetamine with intent to sell and possession without a tax stamp.

Our Court of Appeals affirmed the district judge's decision on both search warrant exceptions. *State v. Fitzgerald,* No. 95,812, unpublished opinion filed July 20, 2007.

The panel considered probable cause established by Fitzgerald's peremptory call to his girlfriend, by the amount of money he was carrying and his arrangement of the bills in numerical order of denomination, and by his description of his not especially well-remunerated employment. The imminent arrival of Fitzgerald's girlfriend to pick up the truck qualified as an exigent circumstance.

On inevitable discovery, the panel recited the requirements of the exception and then moved immediately to an examination of whether the girlfriend's consent was voluntary. In the panel's view, the girlfriend had consented to a search of the truck because she knew it had already been searched and expected no more drugs to be found. Under these circumstances, the panel said, the officer's conduct was not coercive and thus the consent voluntary; in turn, the consent supported application of the inevitable discovery exception.

When reviewing a motion to suppress evidence, an appellate court determines whether the factual underpinnings of the district judge's decision are supported by substantial competent evidence. The ultimate legal conclusion to be drawn from those facts raises a question of law requiring application of a de novo standard. When, as is at least partially true here, the facts material to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Anderson*, 281 Kan. 896, 900-01, 136 P.3d 406 (2006); *State v. Ramirez*, 278 Kan. 402, 404, 100 P.3d 94 (2004). The State bears the burden of proof when there is a motion to suppress; it must show the lawfulness of the challenged search. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003).

The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 15 of the Kansas Constitution Bill of Rights provides protection identical to that provided under the Fourth

Amendment to the United States Constitution. *State v. Schoonover*, 281 Kan. 453, 493, 133 P.3d 48 (2006); *State v. Schultz*, 252 Kan. 819, 824, 850 P.2d 818 (1993).

A warrantless search is per se unreasonable if it does not fall within a recognized exception to the search warrant requirement. *State v. Ibarra*, 282 Kan. 530, 536, 147 P.3d 842 (2006); *State v. Mendez*, 275 Kan. 412, 420-21, 66 P.3d 811 (2003). The recognized exceptions to the warrant requirement for searches and seizures include consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses. *State v. Rupnick*, 280 Kan. 720, 727, 125 P.3d 541 (2005).

A traffic stop is a seizure within the meaning of the Fourth Amendment, but Fitzgerald's Fourth Amendment argument does not focus on the legality of the stop. See *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). He also does not challenge the validity of his arrest for driving on a suspended license in violation of K.S.A. 8-262(a)(1) or the propriety of Thatcher's search of his person incident to that arrest. Rather, Fitzgerald asserts that Thatcher's initial search of the truck did not fall within any of the warrant exceptions; specifically, it was not supported by probable cause. Further, he argues, his girlfriend's later consent to the second search did not cure the illegality of the first search, because her consent was not voluntarily given.

*Initial Search*

As to Thatcher's initial search of the truck, no facts are in dispute; and both parties acknowledge that the only potentially applicable warrant exception is probable cause plus exigent circumstances. As long as probable cause exists, automobiles and other vehicles may be searched without warrants where it is not practicable to secure a warrant; their mobility fulfills the additional requirement of the existence of exigent circumstances. See, *e.g.*, *State v. Garcia & Bell*, 210 Kan. 806, 810, 504 P.2d 172 (1972) (citing *Carroll v. United States*, 267 U.S. 132, 153, 69 L. Ed. 543, 45 S.

Ct. 280 [1925]). If probable cause is absent, the existence of exigent circumstances is irrelevant. *Ibarra*, 282 Kan. at 544.

Probable cause is the reasonable belief that a specific crime has been committed and that a specific person committed it. Probable cause exists when the facts and circumstances within a law enforcement officer's knowledge and about which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed. When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt. *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2, 3, 83 P.3d 794 (2004). Evidence of probable cause need not reach the level necessary to prove guilt beyond a reasonable doubt, but it must constitute more than mere suspicion. *State v. Mayberry*, 248 Kan. 369, 376, 807 P.2d 86 (1991).

With regard to the support for probable cause contributed by the cash found in Fitzgerald's pockets, the State relies on a Court of Appeals civil forfeiture action. It asserts that "thick rolls of organized cash are usually in close proximity to drugs." See *State v. 1978 Chevrolet Automobile*, 17 Kan. App. 2d 144, 835 P.2d 1376 (1992). In *1978 Chevrolet*, claimants had been stopped for speeding and were "extremely nervous." 17 Kan. App. 2d at 145. One claimant admitted to concealing money under his coat, and he turned over $30,900, sealed in nine separate envelopes. Claimants consented to a search of their car, in which officers discovered marijuana. After the State sought forfeiture of the car and cash, the Court of Appeals held that claimants failed to rebut a statutory presumption that money found in close proximity to controlled substances is subject to forfeiture. See K.S.A. 1991 Supp. 65-4135(a)(6); 17 Kan. App. 2d at 147-50.

Fitzgerald distinguishes *1978 Chevrolet* and other cases cited by the State, either because they were civil forfeiture cases, or because cash was a product of rather than a reason for a warrantless search. See *State v. Romo-Uriarie*, 33 Kan. App. 2d 22, 97 P.3d 1051, *rev. denied* 278 Kan. 851 (2004) (evidence sufficient to support prob-

able cause to bind over defendant when, after traffic stop, defendant's statements to police about destination, relationship to codefendants wholly inconsistent with codefendants' statements; drug dog alerted twice to trunk of car; police officers found more than $85,000 for which explanations not credible; defendant had drug charges pending in another county; codefendant had subscription card for magazine featuring marijuana-growing paraphernalia); *City of Hoisington v. $2,044 in U.S. Currency*, 27 Kan. App. 2d 825, 8 P.3d 58 (2000) (defendant arrested for possession after consent to search purse revealed methamphetamine, paraphernalia; cash discovered when she removed it from pocket to post bail subject to forfeiture).

We agree with Fitzgerald that the cases cited by the State provide little if any support for the idea that Thatcher's discovery of $2,673 in Fitzgerald's pockets, by itself, would have been adequate to support probable cause. A large amount of currency, standing alone, is not necessarily an indication of criminal activity. See *State v. Anderson*, 259 Kan. 16, 910 P.2d 180 (1996); *United States v. $83,900.00 in U.S. Currency*, 774 F. Supp. 1305, 1317 (D. Kan. 1991).

However, the State is correct that we must look at the totality of circumstances, rather than one circumstance, to determine whether probable cause existed to support the initial search in this case. It argues that six circumstances contributed to probable cause in this case: Thatcher's training and experience, Fitzgerald's running of a stop sign, his driving without a license, his telephone call to his girlfriend to pick up her truck, the amount and arrangement of the cash in his pockets, and his explanation of the source of the cash.

We have not previously recognized an officer's training and experience as a legitimate factor to consider in a court's analysis of probable cause supporting a warrantless search. We have taken such training and experience into account when evaluating whether reasonable suspicion was present. See *State v. Moore*, 283 Kan. 344, 359-60, 154 P.3d 1 (2007) (experience, training of troopers among many factors determining existence of reasonable suspicion sufficient to detain); see also *State v. Cook*, 38 Kan. App. 2d 20,

24, 161 P.3d 779 (2007) (deference due trained officer's ability to recognize suspicious behavior supporting stop). We also have recognized a role for an officer's training and experience when evaluating the existence of probable cause in other situations. See *State v. Wonders*, 263 Kan. 582, 596, 952 P.2d 1351 (1998) (citing *Texas v. Brown*, 460 U.S. 730, 742-43, 75 L. Ed. 2d 502, 103 S. Ct. 1535 [1983]) (officer's experience considered when evaluating testimony that bulge in clothing "immediately apparent" as marijuana); *State v. Riley*, unpublished Court of Appeals opinion, No. 93,127, filed January 13, 2006 (officers' training, experience considered to determine whether their detection of drug odor described in affidavit supported probable cause). Although this type of recognition is not without its critics, see *Cook*, 38 Kan. App. 2d at 25 (Greene, J., dissenting) (reliance on officer's training and experience to support existence of reasonable suspicion adds subjective element to test, moves it too close to constitutionally insufficient hunch), we are comfortable that using an officer's training and experience merely as one factor in a totality of the circumstances analysis of reasonable suspicion or probable cause does not infringe on the constitutional rights of a criminal defendant. We therefore consider Thatcher's training and experience in this case, and, in theory, that factor weighs in favor of the existence of probable cause to conduct the initial search of the truck. In actuality, Thatcher's training and experience were invoked only as to the import of the cash in Fitzgerald's pockets. We discuss the influence of the amount and arrangement of the cash again below.

The second and third factors cited by the State—Fitzgerald's running of a stop sign and his driving without a license—do not favor the State. The running of the stop sign is neutral on the question of whether probable cause to search the truck for drug evidence existed. Although some traffic infractions may lead to a reasonable inference that the stopped vehicle contains drug evidence, running a stop sign in the middle of the afternoon is not one of them.

The absence of a driver's license, if anything, is helpful to Fitzgerald. It tends to explain why he would be so eager to call his girlfriend to pick up her truck. A driver in his position, knowing

that his or her suspended license is bound to be detected, might want to prepare for an anticipated arrest by notifying a substitute driver that his or her services will be needed behind the wheel.

We also view the fourth factor cited by the State—the telephone call itself—as neutral or helpful to Fitzgerald. Again, because a driver in his position could foresee arrest for driving while his license was suspended when he or she has been stopped for a traffic infraction, the peremptory call to the girlfriend to pick up the truck does not have the same probable cause impact it might in another situation.

The fifth factor—the amount and arrangement of the cash in Fitzgerald's pockets—tends to demonstrate probable cause rather than dispel it. It is reasonable for a police officer in Thatcher's position to become suspicious of drug dealing when he discovers that someone has a large amount of cash on his or her person. It is also reasonable for an officer to suspect that a drug dealer may transport his product in the truck he is driving. We do note, however, that the amount found on Fitzgerald was far smaller than amounts that have been at issue in other cases. See, *e.g., Romo-Uriarie*, 33 Kan. App. 2d at 25 (more than $85,000). Also, the arrangement of bills here strikes us as fairly unremarkable. Apparently there was no special packaging, not even paper-clipped sections. Common human experience tells us that many people with no involvement in drug dealing prefer to carry any cash on their person in numerical order of denomination. This organization facilitates use of the cash in transactions and assists with mental calculation of the amount that remains available for expenditures.

We read the final factor—Fitzgerald's modest income—as neutral or helpful to Fitzgerald on the probable cause question. Certainly, it would be difficult for a person earning approximately $20,000 a year to collect and carry more than $2,600 at any one time. But a modest living is not unemployment. And Thatcher had no additional information about Fitzgerald's family or living circumstances, including how many persons Fitzgerald's income was expected to house, feed, and clothe. Without such additional information, we do not think the income information shared by Fitz-

gerald should have added to the quantum of reasonable suspicion or probable cause. If anything, it tended to reduce it.

When the totality of all of these circumstances is considered, as it must be, we conclude that the State did not carry its burden of demonstrating the existence of probable cause to support Thatcher's initial search of the truck. Of the factors it cites, most are neutral or helpful to the defense, tending to diffuse suspicion rather than enhance it. Those factors that do contribute to probable cause are weak. The district court should not have relied on the probable cause plus exigent circumstances exception to the warrant requirement to admit the evidence derived from the initial search of the truck. See *Quinn v. State*, 268 Ga. 70, 71, 485 S.E.2d 483 (1997) (discovery of a large, unexplained sum of money, standing alone, does not constitute articulable suspicion of criminal activity justifying seizure of individual); *Polke v. State*, 203 Ga. App. 306, 308, 417 S.E.2d 22 (1992) (possession of large sums of money may be suspicious but not itself criminal, does not provide probable cause for immediate warrantless arrest); *Gebremedhin v. State*, 202 Ga. App. 811, 415 S.E.2d 529 (1992) (large sum contributing factor to establish probable cause for a drug arrest); *Brown v. State*, 191 Ga. App. 779, 780, 383 S.E.2d 170 (1989) (large sum discovered after consensual search; no other articulable reasons for suspicion; no probable cause for seizure of property); but see *Moore*, 283 Kan. at 358 (smell of dryer sheets, alone, does not provide probable cause to search); *Ibarra*, 282 at 552-53 (smell of ether, not an illegal substance, cannot alone establish probable cause for search).

### Inevitable Discovery

We turn next to the State's alternative argument—that the girlfriend's later voluntary consent made the discovery of the drug evidence in the truck inevitable and thus excused the absence of a warrant.

Ordinarily, there is no need, from an analytical perspective, to stack the consent exception and the inevitable discovery exception to justify a warrantless search. Either is sufficient in itself. Here, however, the State has no choice. The warrantless search that bore usable fruit had already been conducted when Fitzgerald's girl-

friend's consent was sought; it was simply too late for the consent alone to absolve Thatcher of his responsibility to comply with the Fourth Amendment. On the other hand, if the consent could be characterized as *not only voluntary but inevitable* independent of the Constitutional violation, the State can segue from the consent exception to the inevitable discovery exception. See *State v. Huff*, 278 Kan. 214, 221, 92 P.3d 604 (2004) (warrant not required if evidence uncovered by search would inevitably have been discovered by law enforcement).

This clever two-step is not possible here. Even if we assume the accuracy of Thatcher's version of events and further assume on the disputed evidence the *voluntariness* of his girlfriend's after-the-fact consent, we cannot say on this record that her consent also was *inevitable*. Although voluntariness was contested and tried, inevitability was not. The State put on no evidence to meet its burden of proving it. Thus it cannot shelter the products of the search under the umbrella of inevitable discovery.

Judgment of the Court of Appeals, affirming the district court, is reversed. Judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.