NOT DESIGNATED FOR PUBLICATION

No. 117,990

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CODY ALAN BARTA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellsworth District Court; STEVEN E. JOHNSON, judge. Opinion filed April 20, 2018. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Paul J. Kasper*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

PER CURIAM: Cody Alan Barta appeals his conviction for driving under the influence of alcohol (DUI) following a bench trial based on stipulated facts.

*Facts*

The facts establish that on June 3, 2016, the vehicle Barta was driving was stopped in Ellsworth County for a defective tag light. After stopping Barta's vehicle, the officer's suspicion that Barta was impaired led to an investigation resulting in Barta's arrest. Barta has stipulated that there was probable cause to arrest him for DUI. He was transported to

1

the Ellsworth County Law Enforcement Center where the officer gave Barta the oral and written notices required by the Kansas implied consent law through the use of a DC-70 form, which had been revised on February 26, 2016. After receiving these notices, Barta agreed to submit to a breath test, which indicated a breath-alcohol concentration above the legal limit.

Barta was charged with DUI. He moved to suppress the breath-test results, contending that his consent to the test was coerced and involuntary. He challenged the constitutionality of the Kansas implied consent law and argued that the breath test was an unreasonable search in violation of the Fourth Amendment to the United States Constitution. The district court denied Barta's motion and found him guilty of a second-time DUI in violation of K.S.A. 2015 Supp. 8-1567.

*Claims on Appeal*

On appeal, Barta argues that the State violated his constitutional rights under the United States Constitution and the Kansas Constitution by subjecting him to a warrantless breath test pursuant to the Kansas implied consent law. He contends that the State did not prove that his consent to the test was voluntary and free from coercion as discussed in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*), and in *State v. Nece*, 303 Kan. 888, 889, 897, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*).

*Appellate Review Standards*

Because the district court's ruling on Barta's motion was based on stipulated facts, whether to suppress the evidence is a question of law over which we have unlimited review. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016).

*Analysis*

The Fourth Amendment to the United States Constitution prohibits unreasonable searches. Breath tests conducted by the police constitute searches. See *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2173, 195 L. Ed. 2d 560 (2016); *Ryce II*, 306 Kan. at 684. The Kansas Constitution Bill of Rights §15 provides the same protections against unreasonable searches as does the United States Constitution. *State v. Henning*, 289 Kan. 136, 145, 209 P.3d 711 (2009).

Any warrantless search is intrinsically unreasonable unless it falls within one of the recognized exceptions to the search warrant requirement. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). One of those exceptions is that the defendant consented to the search. See *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012) (citing *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 [2008]).

*Consent and Withdrawal of Consent*

Consent is a fundamental element of the Kansas implied consent law, which provides that a driver consents to being tested for blood-alcohol content by driving on Kansas roadways. K.S.A. 2017 Supp. 8-1001(a). The notice provision of the Kansas implied consent law, K.S.A. 2017 Supp. 8-1001(k), which was also contained in the DC-70 form advisory given to suspects before testing, provided the foundation for the consent exception to the warrant requirement. It provided:

> "Before a test or tests are administered under this section, the person shall be given oral and written notice that:
> "(1) Kansas law requires the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both;
> "(2) the opportunity to consent to or refuse a test is not a constitutional right;

3

"(3) there is no constitutional right to consult with an attorney regarding whether to submit to testing;

**"(4) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such person has:**

**(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older; or**

**(B) any prior conviction for a violation of K.S.A. 8-1567 or 8-2,144, and amendments thereto, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that such section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older;**

"(5) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person's driving privileges will be suspended for one year for the first or subsequent occurrence;

"(6) if the person submits to and completes the test or tests and the test results show:

(A) An alcohol concentration of .08 or greater, the person's driving privileges will be suspended for 30 days for the first occurrence and one year for the second or subsequent occurrence; or

(B) an alcohol concentration of .15 or greater, the person's driving privileges will be suspended for one year for the first or subsequent occurrence;

"(7) refusal to submit to testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both;

"(8) the results of the testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both; and

4

"(9) after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing." (Emphasis added.)

The issue of consent under the Kansas implied consent law was addressed in *Ryce* and *Nece*.

In *Ryce I*, K.S.A. 2014 Supp. 8-1025, which made it a crime to withdraw the implied consent for testing under K.S.A. 2014 Supp. 8-1001, was found to be facially unconstitutional because it punishes an individual for withdrawing consent when the right to withdraw consent is a corollary to the Fourth Amendment requirement that the consent to a search be freely and voluntarily given. *Ryce I*, 303 Kan. 899, Syl. ¶¶ 9, 12.

In the court's syllabus in *Nece I*, the court stated:

"A driving under the influence suspect's consent to breath-alcohol testing is not freely and voluntarily given if such consent was given following a written and oral advisory informing the suspect that he or she might 'be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties equal to or greater than those for the crime of driving under the influence.' The advisory is inaccurate and cannot serve as the basis for a voluntary consent in light of *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016), which holds that K.S.A. 2014 Supp. 8-1025 is unconstitutional." *Nece I*, 303 Kan. 888, Syl. ¶.

The decisions in *Nece I* and *Ryce I* were handed down on February 26, 2016. That same day, the Kansas Attorney General and Kansas Department of Revenue issued a revised DC-70 form which conformed to the holdings in *Nece I* and *Ryce I* by deleting the unduly coercive provision of 8-1001(k)(4) (set forth in bold above) which used the threat of the driver being charged with a separate crime to induce the driver to consent to testing.

Barta was stopped and arrested on June 3, 2016. He was read the revised DC-70 which deleted the provision for the charging of a separate crime found to be unduly coercive in *Nece I* and *Ryce I*.

Barta does not challenge any other provision of the DC-70 notice he was provided other than the provision in the advisory regarding the charging of a separate crime for refusing to submit to a test. As the court stated in *Nece I*:

> "Advising a DUI suspect of the legal consequences of a test refusal—that is, of the difficult choices confronting a DUI suspect—does not necessarily unconstitutionally coerce consent.
>
> > "'"Concededly such a threat may be coercive in the sense that an accused would not have consented to the search in the absence of the threat. *But not all coercion inducing consent to a search is constitutionally impermissible. If the officers threaten only to do what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable.*' [Citation omitted.]"' *State v. Moore*, 354 Or. 493, 502, 318 P.3d 1133 (2013), *opinion adhered to as modified on reconsideration* 354 Or. 835, 322 P.3d 468 (2014).
>
> Accurately informing a driver of the lawful consequences that flow from his or her decision to refuse to submit to blood-alcohol testing 'ensures' that the driver 'makes an informed choice whether to engage in that behavior or not.' 354 Or. at 502-03 ('[T]he failure to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary.')." *Nece I*, 303 Kan. at 895.

Thus, the provisions of the DC-70 advisory, after deletion of the provision for the charging of a separate crime for failure to submit to testing, remain valid and do not amount to unconstitutional coercion of a suspect driver's consent to testing.

6

Other than in *Nece* and *Ryce*, Kansas courts had consistently upheld the constitutionality of warrantless alcohol tests conducted pursuant to K.S.A. 8-1001. See, e.g., *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008) (stating "compulsory testing for alcohol or drugs through drivers' implied, even coerced, consent does not violate the Constitution; it is reasonable in light of the State's compelling interest in safety on the public roads"), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 1011-13, 350 P.3d 1048 (2015).

Barta was not improperly induced into consenting to a breath test for alcohol. The advisory he was provided did not vitiate his consent to the test. His consent to the test was voluntary and free from the coercion condemned in *Ryce* and *Nece*.

*Good Faith Exception to the Exclusionary Rule*

Barta addresses the good faith exception to the exclusionary rule. We agree that the good faith exception does not apply here. But our agreement is premised on the fact that the officer was not relying in good faith on the constitutionality of the original DC-70 found to be coercive in *Ryce* and *Nece*. To the contrary, his use of the modified DC-70 was an acknowledgement of the coercive nature and unconstitutionality of the original DC-70 which the modified DC-70 corrected. The good faith exception to the exclusionary rule is not at play in this case.

*Claimed Unconstitutionality of the Kansas Implied Consent Law as a Whole*

For his next point, Barta asserts that the Kansas implied consent law has been rendered completely unworkable and facially unconstitutional. According to Barta, as a result of the decision in *Ryce I* an officer is in the Catch 22 situation of either failing to give the statutorily required warnings or, in the alternative, giving a warning that has been declared to be unconstitutional. Thus, because part of the Kansas implied consent

7

law has been declared unconstitutional, he argues that none of the implied consent advisories can survive.

This contention, which involves a matter of statutory and constitutional interpretation, raises questions of law over which our review is de novo. *State v. Dunn*, 304 Kan. 773, 819, 375 P.3d 332 (2016).

Here, Barta was given the statutory warnings contained in a revised DC-70 form which eliminated the provisions found unconstitutionally coercive in *Ryce*. He contends that the officer's failure to give the complete advisories set forth in the statute renders the revised warnings unconstitutional and required suppression of the test results.

But in enacting the Kansas implied consent law, the Legislature provided a severability clause which provided that the remaining provisions of the Act should be enforced in the event that provisions of the law are declared unconstitutional. K.S.A. 8-1007 states:

> "This act shall be construed as supplemental to existing legislation; and if any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section."

Pursuant to this statute, the Kansas Attorney General amended the DC-70 to delete its unconstitutional provisions. As stated in *State v. Limon*, 280 Kan. 275, 304, 122 P.3d 22 (2005): "'[T]he enactment of a severability clause in a statute or series of statutes evidences the intent of the legislature that if some portion or phrase in the statute is unconstitutional, the balance shall be deemed valid.' [Citation omitted.]" Here, the Legislature unequivocally expressed its intent that if a portion of the Kansas implied

consent law was found to be unconstitutional, the remaining provisions of the statute survive.

*Substantial Compliance*

Because K.S.A. 8-1001 et seq. is remedial in nature and is to be liberally construed, "'it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient' when advising a driver of his or her rights under the Kansas implied consent law, provided that the notice in question 'conveyed the essentials of the statute and did not mislead the appellant.' [Citation omitted.]" *Hoeffner v Kansas Dept. of Revenue*, 50 Kan. App. 2d 878, 883, 335 P.3d 684 (2014), *aff'd* No. 110,323, 2016 WL 6248316 (Kan. 2016) (unpublished opinion). In deleting the unconstitutionally coercive provisions of the statute and the original DC-70 advisory, the officer who arrested Barta substantially complied with our implied consent law in advising him. Substantial compliance did not require the officer to misadvise Barta of the possible adverse consequences of withdrawing his consent.

*Claimed Legislative Abandonment of Duty to Pass Constitutional Laws*

Finally, Barta contends that the Legislature abandoned its duty to pass constitutional laws by ignoring the constitutional basis for the Kansas implied consent law and by criminalizing any withdrawal of his consent. He argues: "Once the legislature abandoned the firm constitutional basis for testing obtained under the Kansas Implied consent law it left itself in an unenviable position of only being able to admit testing if the State could first prove voluntary consent free of duress or coercion." But as demonstrated above, the State did prove voluntary consent free of duress or coercion by use of the modified DC-70. Besides, there is no indication that in enacting either K.S.A. 2015 Supp. 8-1025 or K.S.A. 2015 Supp. 8-1001(k)(4) the Kansas Legislature wholly abandoned its responsibility to pass constitutional laws. Other states have statutes similar

to the Kansas implied consent law. Other than the recent holdings in *Nece* and *Ryce*, there is no indication that such laws are unconstitutional. This argument fails.

*Conclusion*

The district court did not err in denying Barta's motion to suppress the results of his breath test and in finding him guilty of a second-time DUI based on the stipulated facts.

Affirmed.