NOT DESIGNATED FOR PUBLICATION

No. 117,460

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES BADZIN,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed May 11, 2018. Affirmed.

*Thomas J. Bath, Jr.* and *Mitch E. Biebighauser*, of Bath & Edmonds, P.A., of Overland Park, for appellant.

*J. Brian Cox*, deputy general counsel, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER, JJ.

PER CURIAM:  In this appeal James Badzin challenges the one-year suspension of his driving privileges by the Kansas Department of Revenue (KDR). The events leading to this suspension began on October 17, 2014, when Badzin was arrested on suspicion of DUI following a traffic stop in Prairie Village. The arresting officer, Benton Roberts, took Badzin to the Prairie Village Police Department where he provided Badzin with the oral and written notices required by the Kansas implied consent law, K.S.A. 2014 Supp. 8-1001, and set forth in the then-current DC-70 form. That form included the following:

1

"1. Kansas law requires you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both.

"2. The opportunity to consent to or refuse a test is not a constitutional right;

. . . .

"4. If you refuse to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, you may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs."

Badzin consented to a breath-alcohol test, which revealed that his blood-alcohol content was above the legal limit. Badzin was informed that his driving privileges were suspended.

Badzin sought an administrative hearing, where his license suspension was affirmed. He then sought judicial review in the district court, where he moved to dismiss the agency's suspension of his license. He argued that the DC-70 form Officer Roberts provided was inaccurate, insufficient, and unconstitutional; and as a consequence, the exclusionary rule required suppression of the breath test evidence, without which there were no grounds for his suspension. The district court denied Badzin's motion. Badzin declined to present any evidence to support his petition for judicial review, so the district court dismissed Badzin's action and this appeal followed.

*Claims*

Badzin makes three claims on appeal:  (1) The district court erred in not suppressing the results of the unlawfully obtained results of his breath test under the exclusionary rule that applies to evidences obtained in violation of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights; (2) the DC-70 notice was inaccurate, insufficient, unconstitutional, and failed to comply with Kansas law; and (3) the suspension of his license violated his substantive and procedural due process rights under the Fourth and  Fourteenth Amendments to the

2

United States Constitution and under § 15 of the Kansas Constitution Bill of Rights. We will take up each of these contentions in turn.

*Review Standards*

Our review of an agency decision is governed by the Kansas Judicial Review Act (KJRA). K.S.A. 77-601 et seq. Under the KJRA, one of the grounds for relief is that the "[t]he agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied." K.S.A. 2017 Supp. 77-621(c)(1).

Challenges involving statutory and constitutional interpretation are questions of law over which we have unlimited review. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 629, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015).

*Application of the Exclusionary Rule*

Badzin first argues that the exclusionary rule requires suppression of the results of his breath test because he was unconstitutionally coerced and his consent was not voluntarily obtained. In support of his argument, Badzin cites *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*); and *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*).

The Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches. *State v. Henning*, 289 Kan. 136, 145, 209 P.3d 711 (2009). A breath test conducted by the police constitutes a search. See *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 2173, 195 L. Ed. 2d 560 (2016). In the criminal context, a breath test is a search protected by the United States and

3

the Kansas Constitutions. *Ryce I*, 303 Kan. at 912; see *Missouri v. McNeeley*, 569 U.S. 141, 148, 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013).

Any warrantless search is intrinsically unreasonable unless it falls within one of the recognized exceptions to the requirement of a search warrant. *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). One of those exceptions is that the defendant consented to the search. See *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012) (citing *State v. Fitzgerald*, 286 Kan. 1124, 1127, 192 P.3d 171 [2008]).

K.S.A. 2014 Supp. 8-1001(a) authorizes an officer to request a person to submit to a breath test during an investigation for DUI because driving on Kansas roadways constitutes an implied consent by the driver to being tested for blood-alcohol content. The DC-70 form notice that was provided to Badzin under the Kansas implied consent law, K.S.A. 2014 Supp. 8-1001(k), stated that if Badzin refused to submit to the breath test, he could be charged with a separate crime.

In *Ryce I*, this provision in the DC-70 form was found to be unconstitutional on its face because it punishes an individual for withdrawing consent when the right to withdraw consent is a corollary to the Fourth Amendment requirement that the consent to a search be freely and voluntarily given. 303 Kan. 899, Syl. ¶¶ 9, 12. In *Nece I*, the court declared that this provision of the DC-70 "cannot serve as the basis for a voluntary consent" in light of its holding in *Ryce. Nece I*, 303 Kan. 888, Syl.

The KDR asserts that the holdings in *Ryce* and *Nece* do not apply in a civil administrative driver's license suspension case. Thus, any constitutional violation was harmless because the violation would not bar the admission in the administrative proceeding of evidence that Badzin was DUI.

4

For an error to be harmless, we must determine that the error "will not or did not affect the trial's outcome." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011). The KDR has the burden to prove harmlessness. See *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

The KDR relies on *Martin* for the proposition that the exclusionary rule is not available as a remedy in a civil administrative driver's license hearing. 285 Kan. at 646. In *Martin*, our Supreme Court held that the exclusionary rule does not require exclusion of a breath test result in a civil proceeding such as a driver's license suspension hearing. The exclusionary rule is a judicially created remedy designed to deter government actors from engaging in unconstitutional conduct. But it is applicable "'only where its deterrence benefits outweigh its "substantial social costs."' [Citation omitted.]" 285 Kan. at 640-41. The *Martin* court stated:

> "The balance outlined by the United States Supreme Court between the benefits and costs of application of the exclusionary rule, when employed in driver's license suspension proceedings, tips in favor of the Department and against Martin and other drivers. The deterrent effect of the rule is already accomplished in the criminal arena. Any additional deterrent effect on law enforcement violation of the Fourth Amendment and § 15 to be gleaned from extension of the rule beyond the criminal DUI setting would be minimal, and it cannot outweigh the remedial imperative of preventing alcohol and/or drug-impaired drivers from injury or killing themselves or others. Responsive administrative license regulation is essential to that public good. It should not be hamstrung by application of the rule here." 285 Kan. at 646.

See *Fischer v. Kansas Dept. of Revenue*, 55 Kan. App. 2d 225, 232, 410 P.3d 933 (2017) (after weighing the deterrence benefits and social costs, the *Martin* court found that the exclusionary rule did not apply to administrative driver's license regulation), *petition for rev. filed* January 19, 2018; *Brumitt v. Kansas Dept. of Revenue*, No. 113,416, 2017 WL 6395804, at *3 (Kan. App. 2017) (unpublished opinion) (no remedy for violations of the

Fourth Amendment in administrative driver's license cases), *petition for rev. filed* January 10, 2018; *Witthuhn v. Kansas Dept. of Revenue*, No. 115,220, 2017 WL 947271, at *2 (Kan. App. 2017) (unpublished opinion) (exclusionary rule does not apply to suppress evidence in administrative driver's license revocation appeals).

Badzin contends that *Martin* is distinguishable. He argues that, unlike in *Martin*, the policy to promptly remove drunk drivers from the roadways is not present here because he had been arrested before the breath test request came, which was after he had been removed from the road. We are not persuaded by this argument. Stopping and arresting Badzin only served to temporarily remove him—a drunk driver—from the road. It was the suspension of his driver's license that served the "remedial imperative" of the law. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 379, 130 P.3d 560 (2006) ("In the context of the implied consent statutes, the legislative purpose of removing dangerous driver's from the public roadways is impaired when a hearing is not promptly held.").

Badzin also claims that *Martin* does not apply if the conduct of the arresting officer was egregious. The claimed egregious conduct here was Officer Roberts informing Badzin of patently unconstitutional and coercive penalties if he chose not to submit to the breath test.

Egregious behavior is behavior that is "'extremely or remarkably bad'" or "'flagrant.'" *Koenig v. Kansas Dept. of Revenue*, No. 99,314, 2008 WL 5455289, at *4 (Kan. App. 2008) (unpublished opinion) (quoting Black's Law Dictionary 534 [7th ed. 1999]). The notice Officer Roberts gave Badzin was the notice mandated by the then-current version of the DC-70. This notice provision had not been declared unconstitutional at the time Officer Roberts provided it to Badzin. There is no indication Officer Roberts was acting in bad faith. Under these circumstances, we are not convinced that Officer Roberts' conduct was egregious.

As a final point on this issue, Badzin asks us to reconsider the holding in *Martin*. But we are bound to follow this Supreme Court precedent absent some indication that the Supreme Court is departing from its holding in *Martin*. See *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015). We see no such indication.

The coercion of Badzin's consent to a breath test did not affect the outcome of these administrative proceedings because the exclusionary rule that would otherwise bar evidence of the breath test results does not apply in driver's license suspension proceedings.

*The Inadequacies of the DC-70 Notice*

Badzin argues that the administrative action should be dismissed because Officer Roberts provided him with an inaccurate, insufficient, and unconstitutional notice before asking him to submit to a breath test. Because Officer Roberts gave a notice that was later found to be unconstitutional and inaccurate, Badzin contends that Officer Roberts failed to comply with the notice requirements and the administrative action should be dismissed.

Badzin's claim raises matters of statutory and constitutional interpretation which are issues of law over which our review is unlimited. See *Martin*, 285 Kan. at 629. Badzin bears the burden to show that the agency action should be set aside. See K.S.A. 2014 Supp. 8-1020(q).

The claimed inaccurate, insufficient, and unconstitutional provisions of the DC-70 form are that (1) Badzin was required to submit to testing to determine if he was under the influence of alcohol or drugs; (2) the opportunity to consent to or refuse a test is not a constitutional right; and (3) he would be charged with a separate crime if he refused to take an evidentiary breath test.

7

Officer Roberts provided Badzin with the following advisories set forth in K.S.A. 2014 Supp. 8-1001(k):

"Before a test or tests are administered under this section, the person shall be given oral and written notice that:

"(1) Kansas law requires the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both;

"(2) the opportunity to consent to or refuse a test is not a constitutional right;

"(3) there is no constitutional right to consult with an attorney regarding whether to submit to testing;

"(4) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such person has:

(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older; or

(B) any prior conviction for a violation of K.S.A. 8-1567 or 8-2,144, and amendments thereto, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that such section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older;

"(5) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person's driving privileges will be suspended for one year for the first or subsequent occurrence;

"(6) if the person submits to and completes the test or tests and the test results show:

8

(A) An alcohol concentration of .08 or greater, the person's driving privileges will be suspended for 30 days for the first occurrence and one year for the second or subsequent occurrence; or

(B) an alcohol concentration of .15 or greater, the person's driving privileges will be suspended for one year for the first or subsequent occurrence;

"(7) refusal to submit to testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both;

"(8) the results of the testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both; and

"(9) after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from medical care facilities willing to conduct such testing."

K.S.A. 2014 Supp. 8-1001 is remedial in nature and is to be liberally construed. Therefore, substantial compliance with the statutory notice is sufficient so long as the notice given "conveyed the essentials of the statute and did not mislead the appellant." *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988).

Badzin points out that paragraph 1 of the advisory misinformed him that testing was required while, in fact, under K.S.A. 2014 Supp. 8-1001(b) and (m) the officer shall *request* the person to submit to testing after giving the advisories. See *Ryce II*, 306 Kan. at 695. Further, Badzin argues that paragraph 2 misinformed him that the opportunity to consent to or refuse the alcohol test was not a constitutional right, and paragraph 4 inaccurately informed him that he could face criminal penalties if he refused to submit to a breath test.

For support Badzin relies on our Supreme Court's holdings in *Meigs v. Kansas Dept. of Revenue*, 251 Kan. 677, 840 P.2d 448 (1992); and *State v. Edgar*, 296 Kan. 513, 530, 294 P.3d 251 (2013).

In *Meigs*, the court considered whether the arresting officer substantially complied with the notice requirement when the advisory given to Meigs provided that refusal to submit to a breath-alcohol test would result in a license suspension for at least 180 days, while the law in effect at the time provided that the refusal to submit to a breath-alcohol test would result in a license suspension for at least 1 year. Because the notice given did not correctly inform Meigs of the proper punishment for a refusal, the officer did not substantially comply with the notice requirement. 251 Kan. at 679-81.

In *Edgar*, the court held that misinforming a DUI suspect that he had no right to refuse a preliminary breath test (PBT) rendered the test involuntary. The court stated that "the PBT statute provides that a driver's refusal to take the test is a traffic infraction, which means that refusal is always an option for the driver. See K.S.A. 2010 Supp. 8-1012(d)." 296 Kan. at 527.

These cases can be distinguished from our present case because the officers in *Meigs* and *Edgar* failed to give accurate warnings that complied with the Kansas implied consent law in effect at the time of the arrest. Here, the warnings given by Officer Roberts complied with K.S.A. 2014 Supp. 8-1001(k), even though some of those provisions were later found to be unconstitutional.

Here, the DC-70 form at the time of Badzin's arrest complied with K.S.A. 2014 Supp. 8-1001(k). Officer Roberts gave Badzin the advisories that were set forth in K.S.A. 2014 Supp. 8-1001(k). When dealing with inaccurate warnings, our Supreme Court has found substantial compliance with the statute is all that is required. *Barnhart*, 243 Kan.

10

209, Syl. ¶ 2. Badzin has not shown that the officer failed to substantially comply with the mandates of the Kansas statute in effect at the time of Badzin's arrest.

As his final point on this issue, Badzin argues that because he was given inaccurate and misleading advisories, he was prevented from making an "informed, knowledgeable and voluntary determination" about whether to refuse to submit to the breath test. But this appeal came to us solely on an issue of law. Badzin did not testify at any point in these proceedings about the voluntariness of his consent. We have no facts in the record from which to determine the totality of circumstances surrounding Badzin's consent. See *Birchfield*, 136 S. Ct. at 2186. When his motion to dismiss was denied by the district court, he chose not to put on evidence but rather permitted the district court to dismiss his petition so he could pursue this appeal. Thus, there is nothing in the record to support this newly raised contention regarding Badzin's mental process in deciding whether to submit to the breath test.

*Due Process Rights*

For his final contention, Badzin asserts that the suspension of his license violated his substantive and procedural due process rights under the Fourth and Fourteenth Amendments to the United States Constitution and under § 15 of the Kansas Constitution Bill of Rights. Badzin did not raise this contention before the administrative agency or before the district court.

The Legislature amended K.S.A. 2017 Supp. 8-1020(p) to allow the district court to consider certain constitutional issues even if not raised at an administrative hearing. See L. 2016, ch. 69, § 2. But this statute does not obviate the need to raise constitutional issues before the district court in order to preserve them for appeals before an appellate court.

11

Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34) requires an appellant to explain why an issue not raised below should be considered for the first time on appeal. Parties who fail to comply with Rule 6.02(a)(5) "risk a ruling that an issue improperly briefed will be deemed waived or abandoned." *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). In *Williams*, our Supreme Court warned that Rule 6.02(a)(5) will be strictly enforced. See 298 Kan. at 1085. The court has continued to strictly enforce the rule and its warning in *Williams*. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (failure to explain why an exception applies is fatal to the appeal).

Based on Supreme Court Rule 6.02(a)(5) and the holding in *Williams*, we conclude that Badzin's due process arguments have been waived and abandoned.

Affirmed.