No. 111,401

STATE OF KANSAS, *Appellant*, v. GREGORY MICHAEL NECE, *Appellee*.

(367 P.3d 1260)

Opinion filed February 26, 2016.

*Brock R. Abbey*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellant.

*Michael S. Holland II*, of Holland and Holland, of Russell, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Ultimately, this appeal raises the question of whether the State violated the Fourth Amendment to the United States Constitution when it tested a driving under the influence (DUI) suspect's breath-alcohol content after the suspect consented to such a search. The suspect, Gregory Michael Nece, contends the evidence found through the breath-alcohol testing must be suppressed because his consent did not meet the Fourth Amendment standard of being freely and voluntarily given. More specifically, he argues the law enforcement officer coerced his consent by advising him, as the law requires, that if he refused consent "you may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal

penalties equal to or greater than those for the crime of driving under the influence."

In *State v. Ryce*, 303 Kan. 899, 964, 368 P.3d 342 (2016), we discussed K.S.A. 2014 Supp. 8-1025, which provides for the separate crime of refusal to submit that was referenced by law enforcement's advisory warning, and held that 8-1025 is facially unconstitutional. We must now decide whether our holding in *Ryce* has any effect on the advisory notice law enforcement is required to provide DUI suspects. In light of *Ryce*, we conclude that Nece's consent was unduly coerced because, contrary to the informed consent advisory, the State could not have constitutionally imposed criminal penalties if Nece had refused to submit to breath-alcohol testing. Thus, because Nece's consent was premised on the inaccurate information in the advisory, Nece's consent was involuntary.

## FACTS AND PROCEDURAL BACKGROUND

In June 2013, a Salina Police Department officer stopped a vehicle for having a defective headlight. When speaking with the driver, Nece, the officer noticed an odor of alcohol and that Nece's eyes were bloodshot. Nece told the officer he had one beer about an hour earlier. Thereafter, Nece failed standardized field sobriety testing, and a preliminary breath test showed his breath-alcohol content was above the legal limit.

The officer arrested Nece and took him to the Saline County Jail. At the jail, the officer requested a breath-alcohol test, and Nece received an oral and written notice of the implied consent advisory, commonly referred to as the DC-70 Implied Consent Advisory. As more fully quoted above, the advisory informed Nece that if he refused to submit to the breath-alcohol test: (1) he "may be charged with a separate crime of refusing to submit to a test" if he had previously refused a test or had been convicted of a DUI offense, (2) his driving privileges would be suspended for a year, and (3) a refusal could be used against him in a trial arising out of the operation of a vehicle while under the influence of alcohol or drugs. Nece agreed to take a breath test, which reflected his breath-alcohol content was .162.

Because Nece did not refuse the test, he was not charged under K.S.A. 2014 Supp. 8-1025, which makes "refusing to submit to or complete a test or tests deemed consented to under subsection (a) of K.S.A. 8-1001" a crime and sets forth the various criminal penalties. But the State charged Nece with driving under the influence of alcohol under K.S.A. 2012 Supp. 8-1567 and driving with a defective headlight under K.S.A. 8-1705. In response to the charges, Nece filed a motion to suppress evidence of the breath test results, arguing his consent to the test was not voluntary and thus the test violated his Fourth Amendment right to be free from an unreasonable search. After a hearing on the motion, the district court found that Nece's "consent to a breath test, after being provided the DC-70 Implied Consent Advisory and having it read to him, was not freely and voluntarily given." The State timely filed an interlocutory appeal to the Court of Appeals.

The Court of Appeals recognized that the breath test was a search subject to the protection of the Fourth Amendment. It also recognized that the Fourth Amendment demands a warrant before any search unless there is an applicable exception to the warrant requirement. *State v. Nece*, No. 111,401, 2014 WL 5313744, at *4 (Kan. App. 2014) (unpublished opinion), *rev. granted* 301 Kan. 1051 (2015). The Court of Appeals then considered whether the consent exception to the warrant requirement applied on the grounds that Nece had given a free and voluntary consent. The Court of Appeals followed this court's precedent, which often notes that the "coercive" effect of informing a suspect of the negative legal consequences of refusing to consent to blood-alcohol testing (such as losing driving privileges) does not render consent involuntary as long as the information about the negative consequences was accurate. 2014 WL 5313744, at *5 (citing *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 [2008]; *Standish v. Department of Revenue*, 235 Kan. 900, 904, 683 P.2d 1276 [1984]; *Popp v. Motor Vehicle Department*, 211 Kan. 763, 767, 508 P.2d 991 [1973]). The court concluded that Nece's consent was voluntary because the officer read him the implied consent advisory, as required by statute, and the advisory correctly advised him of the possibility of criminal charges. The court also recognized

decisions from other courts upholding other states' criminal refusal statutes and determining that the possibility of criminal penalties did not unduly coerce consent. Thus, the court reversed and remanded the case to the district court. *Nece*, 2014 WL 5313744, at *8.

Chief Judge Thomas Malone concurred in the result. He believed, as to the issue of coerced consent, that "the legislature crossed the line when it made test refusal a crime." 2014 WL 5313744, at *8. He would have found that Nece's consent to a warrantless search was involuntary because the advisory, which informed him that he would be subject to criminal sanctions if he refused, was impermissibly coercive. Nonetheless, Chief Judge Malone would have applied the good-faith exception to the exclusionary rule because the officer reasonably relied on a statute in advising Nece of the consequences of refusal. 2014 WL 5313744, at *9. Nece petitioned this court for review, which was granted.

## ANALYSIS

Nece based his motion to suppress evidence on the Fourth Amendment, which provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV; see *Mapp v. Ohio*, 367 U.S. 643, 650-53, 655-57, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (reaffirming that the rule against unreasonable searches and seizures is imposed upon the states).

Notably, "the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). In other words, "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973). In defining the Fourth Amendment's touchstone of reasonableness in a criminal context, the United States Supreme Court has repeatedly held that searches conducted without a warrant " ' "are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." ' " *Los Angeles v. Patel*, 576 U.S. ___, 135 S. Ct. 2443, 2452, 192 L. Ed. 2d 435 (2015)

(quoting *Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 173 L. Ed. 2d 485 [2009]; *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 [1967]); see *State v. Johnson*, 297 Kan. 210, 223, 301 P.3d 287 (2013); *State v. Sanchez-Loredo*, 294 Kan. 50, 55, 272 P.3d 34 (2012). Here, the State performed a search when it tested Nece's breath pursuant to the procedures defined in Kansas' implied consent statute, 8-1001. See *Ryce*, Slip op. at 8.

One of the established and well-delineated exceptions to the warrant requirement is an individual's consent to a search. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Johnson*, 297 Kan. at 223. Kansas' implied consent statute provides a mechanism for obtaining consent to search during a DUI investigation. K.S.A. 2014 Supp. 8-1001(a) states, in part:

"Any person who operates or attempts to operate a vehicle within this state *is deemed to have given consent*, subject to the provisions of this article [10 of chapter 8 of the Kansas statutes], to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." (Emphasis added.)

The term "deemed" consent equates to an "implied" consent of a person who operates or attempts to operate a vehicle in Kansas. See *Johnson*, 297 Kan. at 222.

The remainder of 8-1001 limits the circumstances under which "[a] law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a)." K.S.A. 2014 Supp. 8-1001(b). Among the limitations, 8-1001(k) requires an officer to give a written and oral advisory before testing. The notice must include, among other things, an explanation that the suspect could face certain consequences if he or she refuses to submit to the testing, including the potential loss of driving privileges, the admission of the refusal into evidence, and criminal charges.

The statute contemplates two responses once a law enforcement officer has read the advisory. First, the suspect can refuse to submit to the testing and face potential civil and criminal consequences. We have equated an express refusal with a withdrawal of implied consent. *E.g., State v. Garner*, 227 Kan. 566, 572, 608 P.2d 1321 (1980). Second, like Nece, the suspect can submit to the testing.

Our caselaw has explained that a test taken after the advisory required by 8-1001(k) has been given (at least as the advisory read before incorporating the reference to criminal penalties for refusing to submit to testing) "is the product of the consent exception to the warrant requirement." *Johnson*, 297 Kan. 210, Syl. ¶ 8. In other words, agreeing to submit to testing reaffirms the implied consent and conveys actual consent.

Nece does not dispute that he expressly consented to submit to breath-alcohol testing. Rather, he argues the statutory scheme coerced his consent, rendering it involuntary under the Fourth Amendment. His argument focuses on the required disclosures regarding consequences for refusing to consent and the corresponding statutory provisions that impose these consequences. The United States Supreme Court extensively discussed the requirements for a valid consent in *Schneckloth*, 412 U.S. at 219.

In *Schneckloth*, 412 U.S. at 222, the United States Supreme Court reiterated that " '[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given.' *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 [1968]." To be free and voluntary, "the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." 412 U.S. at 228. The determination of "whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances" and "knowledge of the right to refuse consent is one factor to be taken into account." 412 U.S. at 227. See *State v. Spagnola*, 295 Kan. 1098, 1107, 289 P.3d 68 (2012) (stating that valid consent requires: [1] "clear and positive testimony that consent was unequivocal, specific, and freely given" and [2] a showing that the consent was "given without duress or coercion, express or implied").

In this case, the district court made the factual determination that the consent was not voluntary because Nece had been advised that he "may be charged with a separate crime of refusing to submit to a test" if he had previously refused a test or had been

convicted of a DUI offense. An appellate court reviews a district court's denial of a motion to suppress "using a bifurcated standard." *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). First, an appellate court reviews the district court's findings to determine if they are "supported by substantial competent evidence." 296 Kan. at 485 (further explaining that this court will not "reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence"). Second, an appellate court will review de novo the "ultimate legal conclusion regarding the suppression of evidence." 296 Kan. at 485.

Here, the facts are not in dispute. The written implied consent advisory discloses what was said to Nece before he consented, and neither party asserts that the officer deviated from the standard advisory. Hence, we apply an unlimited standard of review to the ultimate legal conclusion of the district court. See *State v. Jones*, 270 Kan. 526, 527, 17 P.3d 359 (2001).

In doing so, we keep in mind that there is no "talismanic definition of 'voluntariness'" that can be applied mechanically to all situations; rather, voluntariness is to be "determined from the totality of all the [surrounding] circumstances." *Schneckloth*, 412 U.S. at 224, 227. "[T]wo competing concerns must be accommodated in determining the meaning of a 'voluntary' consent—the legitimate need for such searches and the equally important requirement of assuring the absence of coercion." 412 U.S. at 227. Effective consent may "not be coerced, by explicit or implicit means, by implied threat or covert force." 412 U.S. at 228.

After recognizing these well-settled principles, the Court of Appeals stated that there is an "apparent exception" to the general rule about consent being free from coercion when it comes to testing of a DUI suspect. See *Nece*, 2014 WL 5313744, at *4. We are not convinced that labeling the caselaw in this area an "exception" is accurate. More precisely, the decisions of this court and others recognize a rule that would apply to consent situations in any context—consent does not become involuntary merely because someone is advised of legal ramifications of their choice, even if those consequences are serious and negative. As the United States Supreme Court explained, albeit with reference to the Fifth Amendment, while the choice to submit to or refuse a blood-alcohol test

"will not be an easy or pleasant one for the suspect to make," the criminal process "often requires suspects and defendants to make difficult choices." *South Dakota v. Neville*, 459 U.S. 553, 564, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983).

Advising a DUI suspect of the legal consequences of a test refusal—that is, of the difficult choices confronting a DUI suspect—does not necessarily unconstitutionally coerce consent.

"'"Concededly such a threat may be coercive in the sense that an accused would not have consented to the search in the absence of the threat. *But not all coercion inducing consent to a search is constitutionally impermissible. If the officers threaten only to do what the law permits them to do, the coercion that the threat may produce is not constitutionally objectionable.*" [Citation omitted.]'" *State v. Moore*, 354 Or. 493, 502, 318 P.3d 1133 (2013), *opinion adhered to as modified on reconsideration*, 354 Or. 835, 322 P.3d 486 (2014).

Accurately informing a driver of the lawful consequences that flow from his or her decision to refuse to submit to blood-alcohol testing "ensures" that the driver "makes an informed choice whether to engage in that behavior or not." 354 Or. at 502-03 ("[T]he failure to disclose accurate information regarding the potential legal consequences of certain behavior would seem to be a more logical basis for a defendant to assert that his or her decision to engage in that behavior was coerced and involuntary.").

For example, while this court has recognized that civil penalties such as the loss of a driver's license are coercive, this court has upheld as constitutional the advisories informing drivers of those consequences. See, *e.g.*, *Martin*, 285 Kan. at 635; *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 835, 888 P.2d 82 (1995). Likewise, while "law enforcement officers act at their peril in threatening to obtain a search warrant unless probable cause actually exists," they may do so. *State v. Brown*, 245 Kan. 604, 613, 783 P.2d 1278 (1989); see also *City of Kingman v. Lubbers*, 31 Kan. App. 2d 426, 428, 65 P.3d 1075 (2003) ("Where, as here, consent is obtained after informing a driver of actual legal consequences, the consent, if freely given, is valid. The accurate statement would not involve deceit.").

On the other hand, falsely claiming authority to impose consequences for refusing to submit to testing can be coercive. See,

*e.g.*, *Schenckloth*, 412 U.S. at 233 (examining coercion from a false claim of lawful authority context and discussing *Bumper*, 391 U.S. 548-49, which invalidated a consent search based on an officer's false claim to have a warrant). Consequently, threatening to get a search warrant when there are not in fact grounds upon which a warrant could be justified will generally invalidate subsequent consent. *Brown*, 245 Kan. at 612-13.

In Nece's case, the Court of Appeals reasoned that although the advisory did not cite K.S.A. 2014 Supp. 8-1025, it accurately summarized the statute's provisions which created and defined the crime of refusing to submit to breath alcohol testing. Because the advisory accurately informed Nece of the consequences of his refusal, the Court of Appeals majority concluded the advisory was not coercive and Nece's consent was given voluntarily—meaning the results of the breath-alcohol testing could come into evidence against him at trial. *Nece*, 2014 WL 5313744, at *8.

However, the Court of Appeals' premise regarding the legal accuracy of the advisement is undermined by our decision in *Ryce*, in which we hold that K.S.A. 2014 Supp. 8-1025 is unconstitutional. *Ryce*, 303 Kan. at 964. Given the unconstitutionality of 8-1025, Nece could not, in fact, be constitutionally convicted under that statute. Consequently, the 8-1001 provision requiring law enforcement to inform a DUI suspect that by refusing to submit to a breath-alcohol test he or she "may be charged with a separate crime of refusing to submit to a test" is correspondingly not accurate. Given *Ryce* and its interpretation of 8-1025, the advisory inaccurately informed Nece of the consequences of his test refusal. See *Brown*, 245 Kan. at 606.

Although the State has not suggested that any other statute applies, hypothetically circumstances in some cases might justify charging a defendant under K.S.A. 2014 Supp. 21-5904(a)(3), which establishes the crime of "knowingly obstructing, resisting or opposing any person authorized by law . . . in the discharge of any official duty." But the language of the advisory does not match that crime or its criminal penalties. Thus, the general obstruction statute—which in some cases could provide for criminal penalties upon refusing a search—does not make the threat of 8-1025 penalties here an accurate statement of law.

Nece did not build his principle argument in this appeal on the falsity of the advisory or the unconstitutionality of 8-1025. Nevertheless, his briefing was sufficient to lead the State to discuss the constitutionality of 8-1025. We have rejected the State's arguments in *Ryce* and do not repeat that analysis here. We conclude that Nece's briefing sufficiently raised the grounds on which we grant him relief. We hold that Nece's consent was involuntary because it was obtained by means of an inaccurate, and therefore coercive, advisement. As a result, the district court did not err in suppressing the results of Nece's breath test. See *Mapp*, 367 U.S. at 655-57 (incorporating the rule excluding evidence that was obtained through an unreasonable search or seizure); see also *State v. May*, 293 Kan. 858, 870, 269 P.3d 1260 (2012) (an appellate court can affirm the district court if the court was right for the wrong reason). Because we reach this holding, we need not address the other arguments raised by Nece.

Chief Judge Malone, in his separate Court of Appeals' opinion, also concluded the advisory was unconstitutionally coercive—although on different grounds. But he then applied the good-faith exception to permit the use of any evidence obtained through the search, as at the time the police had no reason to think 8-1025 was unconstitutional or that the 8-1001 advisory was inaccurate. Despite Chief Judge Malone's suggestion that the good-faith exception might apply, the State did not file a supplemental brief presenting the argument to us and at oral argument the attorney for the State conceded that the State was not seeking application of the exception. We, therefore, decline to consider the potential application of the exception to Nece's case. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (an argument not briefed is deemed waived and abandoned).

We reverse the Court of Appeals and affirm the district court's decision to suppress Nece's breath-alcohol test results, as the testing resulted from an involuntary consent.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

\* \* \*

STEGALL, J., concurring: For the reasons set forth in my dissent in *State v. Ryce*, 303 Kan. 899, 964-72, 368 P.3d 342 (2016), I cannot join the majority's holding that the implied consent advisory is inaccurate and cannot serve as the basis for a voluntary consent in light of *Ryce*, which holds that K.S.A. 2014 Supp. 8-1025 is unconstitutional. *Nece*, 303 Kan. 888, Syl. As I articulated in *Ryce*, K.S.A. 2014 Supp. 8-1025 is not facially unconstitutional. The holding in *Ryce*—in conjunction with the majority's holding here that any and all consents for testing, obtained upon the giving of this advisory, are coercive as a matter of law—will have the effect of overturning countless numbers of otherwise lawful driving-under-the-influence convictions in this state.

The State should always be given the opportunity to demonstrate that the evidence was not obtained in violation of the Fourth Amendment to the United States Constitution. If in this case, or any other, the State could demonstrate that it had a lawful basis apart from consent to require the driver to submit to the test, then either the advisory would be factual—*i.e.*, refusal to submit could cause the driver to incur additional criminal liability—and the consent voluntary; or, the State's need to rely on the consent exception to the warrant requirement would no longer exist. This approach would properly balance the competing interests at work in these cases and would enable this court to vindicate every constitutional mandate we are charged with enforcing while at the same time avoiding the significant damage we do today to the State's legitimate and compelling law enforcement efforts to protect Kansas citizens from the menace of drunk driving.

It is only because Nece's motion to suppress was presented to the court on stipulated facts, and because the parties did not stipulate to any fact that could lead a reasonable judge to conclude that the State could have lawfully charged Nece with a crime for failing to submit to the test, that I am compelled to concur in the result reached here by the majority.