NOT DESIGNATED FOR PUBLICATION

No. 117,643

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

JUSTIN SPENCER,
*Appellant.*

MEMORANDUM OPINION

Appeal from Osage District Court; TAYLOR J. WINE, judge. Opinion filed October 19, 2018. Conviction reversed, sentence vacated, and case remanded with directions.

*Malcolm L. Copeland*, of Topeka, for appellant.

*Brandon L. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., HILL, J., and STUTZMAN, S.J.

PER CURIAM:  At the conclusion of a bench trial in the Osage County District Court, Justin Spencer was found guilty of driving under the influence (DUI), second offense, a class A misdemeanor. Spencer's conviction was based on an amended charge that he violated K.S.A. 2017 Supp. 8-1567(a)(2) by driving with a breath alcohol content greater than .08, measured within three hours of the time the time he drove. Spencer claims he was arrested without a warrant or probable cause, rendering his breath alcohol test results inadmissible. He also argues the district court should not have allowed the State to amend the charge against him after the close of evidence. Because we agree the

1

district court should not have allowed the late amendment, we reverse and set aside Spencer's conviction and remand to the district court with directions as specified below.

FACTS AND PROCEDURAL BACKGROUND

At about 10:54 p.m. on July 12, 2014, Matthew Johnson, a Carbondale police officer, was conducting stationary traffic enforcement when he stopped a vehicle that did not have a working tag light. Johnson did not observe any traffic infractions or anything else about the way the vehicle was driven that suggested the driver was under the influence of alcohol or drugs. Of three in the vehicle, Spencer was identified as the driver. When Johnson walked up to the vehicle he saw an open bottle of beer in the pouch behind the front passenger seat and also noticed several open packages of beer. When Johnson asked, Spencer denied he had been drinking. Later, however, Spencer admitted to drinking around 1 p.m. Up to that point, Johnson said he had not made any observations consistent with Spencer being under the influence of alcohol. Spencer had no difficulty providing his driver's license, no bloodshot eyes, and no slurred speech or difficulty communicating. Nevertheless, Johnson asked the occupants to step out of the vehicle.

On the basis of the open container of alcohol, Johnson conducted standardized field sobriety tests (SFSTs) on Spencer. Johnson evaluated Spencer as failing the walk-and-turn test, showing four clues out of seven possible. Johnson also had Spencer perform the one-leg-stand test. He marked Spencer for two clues of impairment out of four on that test, with two or more clues showing possible impairment. Johnson also asked Spencer to submit to a preliminary breath test (PBT). Officer Johnson told Spencer he did not have a right to refuse the test and refusal could result in a separate charge. Spencer agreed and the testing device showed his breath alcohol content was .097. Johnson said Spencer displayed poor coordination and an inability to follow basic

instructions throughout the encounter. He also smelled the odor of alcohol on Spencer's breath.

Johnson arrested Spencer after the SFSTs and the PBT, having concluded Spencer was unable to safely operate a vehicle. Johnson later conducted an evidentiary breath test using an Intoxilyzer 8000 at the Osage County Sheriff's Office. That test showed a breath alcohol concentration of .082, just over the legal threshold. Spencer then admitted he had consumed a couple of beers at a restaurant shortly before Johnson stopped him. The State charged Spencer with DUI—second offense.

Spencer filed a motion to suppress the evidence gathered after the stop, including Johnson's observations during the SFSTs, the PBT results, and the Intoxilyzer results. Spencer argued Johnson lacked reasonable suspicion to justify the stop and did not have probable cause to arrest him. The district court denied the motion.

Spencer filed another motion to suppress the PBT results in light of the Kansas Supreme Court's decision in *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016). The motion was founded on Johnson's statements to Spencer that Kansas law required him to submit to a test to determine the presence of alcohol or drugs, that Spencer did not have a constitutional right to refuse the test, and that refusal could result in being charged with a separate crime which carried criminal penalties greater than or equal to the penalties for DUI. *Nece* held that a person's consent to a breath-alcohol test is not freely and voluntarily given if the consent is given following a written and oral advisory informing the person that he or she may be charged with a separate crime for refusing the test. 303 Kan. at 888-89. Again, the district court denied the motion.

Spencer chose to be tried by the court. After both parties had presented their evidence and rested, in the rebuttal portion of the State's closing argument, the State moved to amend its complaint to charge Spencer under K.S.A. 2017 Supp. 8-1567(a)(2),

3

often referred to as a per se violation, for having a breath test result over .08, measured within three hours of driving. The original complaint charged Spencer with violating K.S.A. 2017 Supp. 8-1567(a)(1), which required proof of an alcohol concentration in excess of .08 at the time of driving. Over objection by Spencer's counsel, the district court allowed the amendment.

Although the district court denied Spencer's motion to suppress the PBT, the judge said he would not consider the PBT in determining probable cause, then found that probable cause existed to arrest Spencer. The court relied upon the evidence that Johnson smelled the odor of alcohol and observed an open container in the vehicle, that Spencer admitted to drinking alcohol, and that he failed the SFSTs. The court concluded Spencer was guilty of DUI, second offense.

The district court sentenced Spencer in March 2017, although there are some elements of ambiguity within that sentence. The sentencing journal entry shows the court imposed a sentence of 12 months in the county jail, although it also represents that "[o]f the . . . total sentence 7 Months are Suspended" and, elsewhere, "7 Months Suspended" from the "Sentence Imposed." These parts of the journal entry are inconsistent with K.S.A. 2017 Supp. 21-6603(h), which defines "suspension of sentence" as "a procedure under which a defendant, convicted of a crime, is released by the court *without imposition of sentence*." (Emphasis added.) The sentencing journal entry also shows Spencer was ordered to serve the 3,600 hours of his 12-month sentence, with work release permitted after 48 hours, but also directs 12 months of supervised probation, which would not apply if the 3,600 hours were to be served.

Spencer timely appeals.

ANALYSIS

Spencer appeals on the basis of two issues: (1) lack of probable cause for his arrest; and (2) error by the district court when it granted the State's motion to amend the complaint.

*Probable cause*

Spencer argues Johnson lacked probable cause to support his arrest, which made the subsequent Intoxilyzer result inadmissible. The State acknowledges the question is a close call but argues the evidence was sufficient to meet the probable cause threshold.

We apply "a bifurcated standard when reviewing a district court's suppression of evidence." *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). We review the district court's factual findings to determine whether they are supported by substantial competent evidence and exercise de novo review of any legal conclusions. 293 Kan. at 862. "Substantial evidence is . . . evidence that a reasonable person might accept as sufficient to support a conclusion." 293 Kan. at 862.

"To be lawful, a warrantless arrest must be supported by probable cause." *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). The Kansas Supreme Court has defined probable cause as follows:

> "Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 (2004). Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. *Bruch*, 282 Kan. at 775-76. Probable cause is determined by evaluating the totality of the circumstances. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006). As in other totality of the circumstance tests, there is no rigid application of factors and

courts should not merely count the facts or factors that support one side of the determination or the other. *State v. McGinnis*, 290 Kan. 547, 552-53, 233 P.3d 246 (2010); see *Smith*, 291 Kan. at 515." *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 (2011).

Since Spencer does not challenge the district court's factual findings, the only question is whether the evidence supported the legal conclusion reached by the court. The district court heard evidence that: Spencer was not observed driving erratically; was not slurring his speech or having difficulty communicating; had no difficulty getting out of the car; and neither fumbled with his driver's license nor had bloodshot eyes. However, Spencer denied drinking although Johnson smelled alcohol on his breath and Johnson also found an open bottle of beer and several open packages of beer in the vehicle. Additionally, based on Johnson's evaluation, Spencer failed both of the SFSTs that were administered. And, in Johnson's opinion, Spencer displayed both poor coordination and an inability to follow basic instructions.

A reasonable person may accept the combined odor, admitted consumption, open container, and failed field sobriety tests as evidence supporting the district court's probable cause finding. While this evidence may not lead to an indisputable conclusion in favor of probable cause, that is not our standard. We find substantial evidence did support the district court's conclusion that Johnson had probable cause to arrest Spencer.

*Amendment of the complaint*

The district court's decision to grant the State's motion to amend its complaint is the second issue Spencer presents. Specifically, Spencer contends that allowing the State to amend its complaint after the close of evidence and after his counsel's argument prejudiced his substantial rights, since he had based his defense on the charge he violated K.S.A. 2017 Supp. 8-1567(a)(1).

The baseline for our consideration of Spencer's claim is established by the statutory authority granted to a district court by K.S.A. 22-3201(e): "The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." We review a decision to allow an amendment for abuse of discretion. *State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). "Discretion is abused only when no reasonable person would take the view adopted by the district court." 281 Kan. at 205.

Spencer does not principally contend the State's amendment alleged a different crime. Instead, he concentrates on the effect of the amendment on his substantial rights. He argues each of the subsections of K.S.A. 2017 Supp. 8-1567 requires a defendant to prepare and argue his or her case in a different way. Spencer was stopped by Johnson on June 12, 2014. At that time the relevant sections read:

> "(a) Driving under the influence is operating or attempting to operate any vehicle within this state while:
> (1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto, is .08 or more;
> (2) the alcohol concentration in the person's blood or breath, as measured within three hours of the time of operating or attempting to operate a vehicle, is .08 or more."
> K.S.A. 2013 Supp. 8-1567.

Spencer notes K.S.A. 2017 Supp. 8-1567(a)(1) requires the State to prove he operated a vehicle while the alcohol concentration in his blood or breath was .08 or more—that is, it was .08 or more *at the time* he was driving. K.S.A. 2017 Supp. 8-1567(a)(2), however, requires no evidence of alcohol concentration contemporaneous with the act of driving. Instead, it more broadly allows the State to prove the excessive alcohol concentration was measured at any time within three hours of driving.

Spencer maintains he prepared to defend the 8-1567(a)(1) charge and tried the case on that basis. Based on the State's charge as it stood during the trial, Spencer notes he made no objection to admission of the .082 breath alcohol result from the Intoxilyzer test, since the State presented no evidence to connect that level of alcohol to the time when he was actually driving. Spencer asserts: "The only way to defeat [a charge under K.S.A. 8-1567(a)(2)] is to show that the Intoxilyzer was not working correctly; the officer was not operating the machine properly; that the officer did not follow protocol; and other limited factors." He argues he pursued none of those defenses because they were not part of his defense of the charge under 8-1567(a)(1).

In the same vein, Spencer states he voiced no objection to the State's failure to present the records custodian with the log for the Intoxilyzer that was used for his test and the machine's maintenance records—his defense did not involve showing faults in the machine's certification, use, or maintenance. As a result, Spencer says he "conceded that the test at 12:20 a.m. [on July 13, 2014] was .082," because the time he was driving was 10:54 p.m.—on the other side of midnight—and "[t]here was no evidence introduced that [his] BAC at 10:54 p.m. on July 12, 2014, was over .080."

In response, the State argues the amendment did not change the crime charged and did not prejudice Spencer because the open file policy of the prosecutor's office allowed Spencer full discovery from the initiation of the case. As a result, Spencer had the Intoxilyzer results from the start and "[i]t was clear throughout the case that the State intended to use the results from that test as evidence against the defendant." The State acknowledges it "made a mistake in charging the wrong subsection" but concludes Spencer's substantial rights were not impacted since he knew the evidence the State intended to use at trial.

In *State v. Wade*, 284 Kan. 527, 161 P.3d 704 (2007), the defendant went to trial on charges alleging first-degree murder based on alternative theories of premeditation

8

and felony murder—with aggravated burglary as the inherently dangerous felony—and a separate charge of aggravated burglary. When defense counsel pointed out the aggravated burglary charge was defective because it did not specify the felony that was the motive for the unauthorized entry, the State responded that first-degree murder was the missing element, and the State later incorporated a premeditated first-degree murder motive into its initial instruction for that count.

At the trial, Wade defended by claiming his entry into the house where the shooting occurred was authorized based on prior practice and he had not intended to shoot the victim, only scare her, but she moved into the line of fire. After the evidence was closed, the State moved to amend the complaint/information to add aggravated assault as an alternative predicate felony for the felony murder and aggravated burglary charges. The district court then instructed the jury that the aggravated burglary required unauthorized entry with intent to commit either premeditated first-degree murder or aggravated assault inside the house.

On the understanding that the aggravated burglary charge was based on the alleged intent to commit premeditated first-degree murder after entry, Wade elected to testify that he did not intend to shoot the victim. Wade argued the district court's post-evidence amendment to the aggravated burglary instruction, adding aggravated assault as an alternative intended felony after entry to the house, broadened the scope of the charges he faced and violated his right to due process. The Kansas Supreme Court agreed, observing:

> "The modified instruction permitted by the trial court relieved the State of its obligation
> to prove a premeditated intent to kill as an element of aggravated burglary. Rather, the
> State could meet its burden by convincing the jury that Wade entered the Coffman house
> with the intent to scare Juul with the handgun, which, of course, was exactly what Wade
> had admitted on the witness stand. *In other words, the erroneous instruction, adding*

9

*aggravated assault as an alternative ulterior felony, transformed Wade's defense testimony into an after-the-fact confession.*" (Emphasis added.) 284 Kan. at 535-36.

The court, which reversed Wade's aggravated burglary conviction and remanded for a new trial, commented: "We do not change the rules of engagement, after the fact, to dilute the State's burden and make a conviction more likely. The integrity of the process is the cornerstone of our criminal justice system." 284 Kan. at 537.

Spencer similarly faced a change in the rules after the case had been concluded. He had made important choices concerning his defense to the charge as it stood before trial, when the trial began, when it ended, and when his counsel had his last chance to argue on his behalf. After it became too late for Spencer to make different choices, the district court's decision to allow the State's amendment considerably decreased the burden on the State. In his closing, Spencer argued the State had failed to present any evidence that his alcohol concentration *at the time he drove* was in excess of .08. The State apparently perceived some vulnerability and belatedly asked for an amendment—to the per se charge. When the district court granted leave to amend the charge, Spencer found himself in Wade's position, because the strategic trial decision to allow admission of the Intoxilyzer result without challenge essentially became a confession to the new charge.

We find the district court abused its discretion when it granted the State's motion to amend the charge from K.S.A. 2017 Supp. 8-1567(a)(1) to K.S.A. 2017 Supp. 8-1567(a)(2). The amendment prejudiced Spencer's substantial rights to a degree that requires reversal. Spencer's conviction must be vacated, and the case must be remanded with directions. Specifically, on remand the district court must decide whether the evidence the State presented at the original trial proved beyond a reasonable doubt that Spencer violated K.S.A. 2017 Supp. 8-1567(a)(1).

Conviction reversed, sentence vacated, and case remanded with directions.

10