NOT DESIGNATED FOR PUBLICATION

No. 121,410

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHAD FORDHAM,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed May 1, 2020.
Affirmed.

*Tricia A. Bath*, of Bath & Edmonds, P.A., of Overland Park, for appellant.

*Donald J. Cooper*, of Legal Services, Kansas Department of Revenue, for appellee.

Before HILL, P.J., BUSER and BRUNS, JJ.

PER CURIAM: Chad Fordham appeals from the district court's decision affirming
the administrative suspension of his driver's license. An Olathe police officer arrested
Fordham for suspicion of driving under the influence of alcohol after he refused to take
the standard field sobriety tests. At the police station, the arresting officer read a DC-70
implied consent advisory form to him, Fordham also refused to take an evidentiary breath
test to determine his blood alcohol content. As a result, the Kansas Department of
Revenue (KDOR) suspended Fordham driver's license. For the reasons stated in this
opinion, we find Fordham's arguments to be unpersuasive and we affirm the district
court's decision upholding the administrative suspension of his license.

1

Around 2:30 a.m. on August 13, 2017, Olathe Police Officer Rebecca Miller stopped Fordham for operating a vehicle with a canceled license plate. Although Officer Miller did not observe Fordham committing any moving violations, he did not immediately pull over when she activated her lights. Instead, he continued to drive before turning into the subdivision in which he lives and parking in his driveway.

After Fordham stopped, he exited his vehicle and walked toward Officer Miller's patrol vehicle. The officer instructed Fordham to return to his vehicle and he complied. At that point, Officer Miller approached Fordham—who had returned to the driver's seat of his vehicle—and observed an open beer can on the passenger seat floorboard as well as a plastic cup with an Austin's Bar and Grill logo near the center console. Fordham denied consuming alcohol and stated that he had just dropped off his friends. When Officer Miller requested Fordham's driver's license, she observed that he had a difficult time removing it from his wallet.

As a result, Officer Miller had Fordham exit his vehicle. As he did so, the officer noted that Fordham displayed poor balance and had to hold onto the vehicle to steady himself. In addition, Officer Miller also smelled a strong odor of alcohol on his breath and observed that his eyes were bloodshot. Based on these observations, Officer Miller requested that Fordham complete the standard field sobriety tests. However, Fordham refused. As a result, Officer Miller placed Fordham under arrest.

After taking Fordham to the police station, Officer Miller provided him with oral and written notices from a DC-70 form that had recently been revised in an attempt to comply with Kansas law. The officer then asked Fordham to submit to a breath alcohol test. However, he refused to submit to testing. Officer Miller then completed a DC-27 form and gave it to Fordham as required by K.S.A. 2017 Supp. 8-1001(k). On the DC-27

form, the officer noted that the reasonable grounds for her belief that Fordham was driving under the influence were that he had the odor of alcohol on his breath, that he had alcohol beverage containers in his vehicle, that he had bloodshot eyes, and he had poor balance or coordination. The DC-27 form also served as notice that Fordham's driver's license would be administratively suspended.

Fordham appealed the administrative suspension to the KDOR. After the suspension was upheld by KDOR, Fordham filed a petition for judicial review in the district court. On November 9, 2018, the district court held an evidentiary hearing at which Officer Miller testified. In addition, the DC-70 and DC-27 forms, pictures of the containers found in Fordham's care, and maps of the route taken by Fordham were admitted into evidence. Thereafter, on March 11, 2019, the district court issued a Memorandum Decision, affirming the administrative suspension of Fordham's driver's license, and subsequently entered a journal entry on June 4, 2019.

ANALYSIS

Fordham raises four issues on appeal. First, he contends that KDOR did not have subject matter jurisdiction to suspend his driver's license because the DC-70 form did not match the language of K.S.A. 2017 Supp. 8-1001(k) and, as a result, the notice provided in the DC-27 form was also inadequate. Second, Fordham contends that the DC-70 form did not substantially comply with K.S.A. 2017 Supp. 8-1001(k) because it included the word "requires" in one of its provisions relating to submission to testing. Third, he contends that because the DC-70 form omitted two subparts required by K.S.A. 2017 Supp. 8-1001(k), it did not substantially comply with the statutory notice requirements. Fourth, Fordham contends that substantial competent evidence does not support the district court's conclusion that Officer Miller had reasonable grounds to believe that he was operating a vehicle while under the influence of alcohol.

3

*Revised DC-70 Implied Consent Form*

The first three issues presented involve the "Implied Consent Advisory" or DC-70 form that was revised on February 26, 2016, and provided to Fordham on August 13, 2017. We also note that there is no dispute regarding whether Officer Miller read the revised DC-70 form to Fordham and provided a copy to him. Rather, Fordham contends that the revised DC-70 did not contain all of the language required by K.S.A. 2017 Supp. 8-1001(k). Thus, we will analyze the first three issues together.

The revised DC-70 form—which was prepared by the Office of the Attorney General—assists law enforcement officers in fulfilling their obligation to advise those suspected of driving under the influence of the various rights and notices of the implied consent law. See K.S.A. 2017 Supp. 8-1001(k). Whether an implied consent advisory complies with statutory requirements is a question of statutory interpretation, which is a question law subject to unlimited review. *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 6, 290 P.3d 549 (2012). In addition, because the implied consent statute is remedial in nature, it should be liberally construed to promote public health, safety and welfare. K.S.A. 2017 Supp. 8-1001(u); *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 894, 256 P.3d 876 (2011).

It is not necessary that an implied consent advisory mirror the statutory language. Rather, substantial compliance with the statute is usually sufficient. Substantial compliance is construed to mean that the notice given is sufficient to advise a person suspected of driving under the influence with the essentials of the statute. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 471-72, 447 P.3d 959 (2019) (citing *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 [1988]).

Fordham argues that because the revised DC-70 form used here did not match the statutory language, he did not receive adequate notice of his rights. As a result, he

suggests that the KDOR did not have subject matter jurisdiction to suspend his driver's license. Just as our review of the DC-70 for substantial compliance with the statute involves a question of law, we also have unlimited review over issues of subject matter jurisdiction. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009).

The parties agree that the DC-70 provided to Fordham following his arrest had been recently revised in an attempt to comply with the Kansas Supreme Court's decisions in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016), *aff'd on reh'g* 306 Kan. 682, 396 P.3d 711 (2017), and *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017). Specifically, they agree that language about the potential criminal penalties for a driver's failure to consent to breath alcohol testing was removed because our Supreme Court found this language to be unconstitutional. Still, Fordham argues that the revised DC-70 form inaccurately reflected the provisions of K.S.A. 2017 Supp. 8-1001(k).

In particular, Fordham maintains that the revised DC-70 form improperly omitted the following statutory language:

"(k) Before a test or tests are administered under this section, the person shall be given oral and written notice that:

. . . .

"(2) the opportunity to consent to or refuse a test is not a constitutional right;

. . . .

"(4) if the person refuses to submit to and complete any test of breath, blood or urine hereinafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or

5

drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such a person has:

(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older; or

(B) any prior conviction for a violation of K.S.A. 8-1567 or 8-2144, and amendments thereto, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that such section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, which occurred: (i) On or after July 1, 2001; and (ii) when such a person was 18 years of age or older." K.S.A. 2017 Supp. 8-1001(k)(2) and (4).

Notwithstanding, several panels of our court have rejected similar—if not identical—arguments. See *Williamson v. Kansas Dept. of Revenue*, No. 118,325, 2018 WL 5730137, at *5-6 (Kan. App. 2018) (unpublished opinion); *McGinnis v. Kansas Dept. of Revenue*, No. 118,326, 2018 WL 5728375, at *5-6 (Kan. App. 2018) (unpublished opinion); *Bynum v. Kansas Dept. of Revenue*, No. 117,874, 2018 WL 2451808, at *4 (Kan. App. 2018) (unpublished opinion). Each of those panels concluded that the DC-70 implied consent advisory form, which was revised in 2016 to remove the unconstitutional subsections in 8-1000(k), substantially complied with the statutory language.

We agree with the analysis set forth in the prior opinions of this court that the DC-70 form revised in 2016 substantially complied with the essential requirements of K.S.A. 2017 Supp. 8-1001(k). Certainly, a law enforcement officer is not required to misstate the law about the possible adverse consequences of withdrawing his or her consent. Indeed, had Officer Miller included the unconstitutional subsections of the K.S.A. 2016 Supp. 8-1001(k) when advising Fordham of his rights, she would have been violating her duty as a law enforcement officer. See *Williamson*, 2018 WL 5730137, at *5. Instead, the revised

6

DC-70 form was intended to make sure that law enforcement officers did not engage in such improper conduct. See *McGinnis*, 2018 WL 5728375, at *6. As this court found in *Bynum*, 2018 WL 2451808, at *3, "[s]uch 'gotcha' arguments are generally not favored and . . . neither conclusion would promote the purposes of public safety embodied in the implied consent statutes."

In addition, the Kansas Legislature has explicitly expressed the intent that if a portion of the Kansas implied consent law is found to be unconstitutional, the remaining provisions of the statute survive. K.S.A. 8-1007; see *Williamson*, 2018 WL 5730137, at *5. Moreover, Fordham does not identify any prejudice that resulted from Officer Miller's reading of the revised DC-70 form to him. Further, the record does not establish that Fordham's prior driving history would have subjected to him to the additional penalties listed in the removed language. See *Bynum*, 2018 WL 2451808, at *4.

Fordham also argues that the implied consent advisory form did not substantially comply with K.S.A. 2017 Supp. 8-1001(k) because the revised DC-70 form stated that he was required to submit to testing. Specifically, the revised DC-70 form provided: "Kansas law (K.S.A. 8-1001) *requires* you to submit to and complete one or more tests of breath, blood or urine to determine if you are under the influence of alcohol or drugs or both." (Emphasis added.) As such, Fordham suggests that Officer Miller improperly advised him of the law as it existed at the time.

However, we note that the last time K.S.A. 8-1001(k) was amended before Fordham's arrest was in 2014. See L. 2014, ch. 131, § 1. So, during the relevant time period, K.S.A. 8-1001(k)(1) mandated that law enforcement officers give oral and written notice that "Kansas law *requires* the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both." (Emphasis added.) Consequently, we find that Officer Miller properly advised Fordham of his rights under K.S.A. 2017 Supp. 8-1001(k) as they existed at the

7

time of his arrest. Furthermore, there is no evidence in the record to suggest that Officer Miller failed to act in good faith in advising Fordham of his rights under the statute.

For these reasons, we conclude that the revised DC-70 implied consent advisory, which Officer Miller read to Fordham at the time of his arrest, was in substantial compliance with the essential elements of K.S.A. 2017 Supp. 8-1000(k). As a result, we also conclude that the KDOR had subject matter jurisdiction to administratively suspend Fordham's driver's license and that notice was proper in Fordham's case.

*Substantial Competent Evidence*

Fordham also contends that the district court erred in concluding that Officer Miller had reasonable grounds to request a breath test. In particular, Fordham argues that the district court ignored evidence which, he believes, showed that he was not driving under the influence of alcohol. We review a district court's decision in a driver's license suspension case under a substantial competent evidence standard of review. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012).

Substantial competent evidence is evidence that a reasonable person could accept as adequate to support a conclusion. In this regard, Fordham bears the burden of establishing that KDOR's decision to suspend his license must be set aside. K.S.A. 2017 Supp. 8-1020(q); *Mitchell v. Kansas Dept. of Revenue*, 41 Kan. App. 2d 114, 121-22, 200 P.3d 496 (2009). In determining whether the district court's findings of fact are supported by substantial competent evidence, we do not reweigh the evidence, assess the credibility of witnesses, or resolve evidentiary conflicts. *State v. Boggess*, 308 Kan. 821, 825, 425 P.3d 324 (2018).

Kansas courts evaluate "reasonable grounds" to believe a driver operated a motor vehicle under the influence of alcohol by looking to probable cause standards. "'Probable

8

cause is determined by evaluating the totality of the circumstances,' giving consideration to 'the information and fair inferences therefrom, known to the officer at the time of arrest,' with 'no rigid application of factors.'" *Swank*, 294 Kan. at 881. "Probable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief that a defendant committed a specific crime. Probable cause does not require an officer have evidence of every element of the crime." *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, Syl. ¶ 1, 242 P.3d 1179 (2010).

A review of the record reveals that the district court conducted an evidentiary hearing regarding the events leading to the suspension of Fordham's driver's license. Fordham candidly admits that Officer Miller's "testimony relating to reasonable grounds recited generally the same facts that she had indicated by her markings on the DC-27 form . . . ." Even so, he suggests that her testimony "also revealed numerous 'good' facts . . . that would tend to vitiate reasonable grounds." Consequently, Fordham argues that a careful review of Officer Miller's testimony shows that there were not reasonable grounds to believe that Fordham was driving under the influence.

Specifically, Fordham asserts that the district court failed to adequately consider that he did not commit any driving infractions before being pulled over and only drove a short distance after Officer Miller turned on her emergency lights. In addition, Fordham asserts that the district court did not adequately consider that he had denied consuming alcohol or that Officer Miller did not observe him having trouble communicating, a disheveled appearance, or unusual behaviors during the stop. Further, Fordham asserts—despite his refusal to participate in testing—that the district court did not consider the fact that he did not fail either the field sobriety or breath alcohol tests.

Despite his arguments to the contrary, Fordham seeks to have us reweigh the evidence presented to the district court. Yet—as discussed above—our review is limited to determining whether substantial competent evidence supports the district court's

conclusions. *Boggess*, 308 Kan. at 825; see also *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1220, 442 P.3d 1038 (2019) (appellate courts should not re-evaluate evidence of impairment but should apply the more deferential substantial competent evidence review). "'In determining whether substantial competent evidence supports the district court's findings, appellate courts must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings and must disregard any conflicting evidence or other inferences that might be drawn from it.'" *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017).

A review of the record reveals that the district court carefully considered all of the evidence presented by the parties at the hearing. Likewise, the district court provided an opportunity for the parties to submit written briefs following the evidentiary hearing. It appears that both parties took advantage of this opportunity. After the matter was finally submitted, the district court issued a memorandum decision affirming the administrative suspension of Fordham's driver's license.

In its memorandum decision, the district court found that Officer Miller smelled the odor of alcohol coming from Fordham, that his eyes were bloodshot, that he had alcohol beverages containers in his car, and that Fordham exhibited poor balance and coordination. The district court recognized that Officer Miller did not observe Fordham committing any driving violations before pulling him over and that he told her that he had not been drinking. Still, the district court found that the stop was valid for an expired license plate. The district court also found it significant that Fordham did not immediately pull over in response to Officer Miller activating the emergency lights on her patrol vehicle. Likewise, the district court found that Fordham struggled to produce his license when requested and refused to take either the field sobriety tests or a breath alcohol test. We find each of these factual findings to be supported by evidence in the record on appeal.

After making these factual findings, the district court affirmed the KDOR's decision to administratively suspend Fordham's driver's license. In doing so, the district court concluded:

> "Although [Fordham's counsel] makes some excellent arguments concerning the ambiguities of Officer Miller's observations and the absence of other typical indicators of the influence of alcohol, under the totality of the circumstances and considering the uncontroverted testimony of the arresting officer, the Court finds and concludes the following: (a) that the initial police encounter was justified and constitutional, (b) the officer had probable cause for the DUI arrest and reasonable grounds to request a test, (c) Mr. Fordham received correct and appropriate implied consent advisories from the DC-70 form used, and (d) he refused to take the requested evidentiary breath test that was requested of him by Officer Miller."

Although some may interpret the evidence differently, we find that the district court's findings are reasonable and based on substantial competent evidence. We reject Fordham's invitation to reweigh the evidence presented to the district court. Thus, we affirm the district court's decision to uphold the KDOR's suspension of Fordham's driver's license.

Affirmed.